UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT SANGO,

        Plaintiff,                Case No. 2:15-cv-105

v.                                        HON. GORDON J. QUIST

TODD BASTIAN, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Robert Sango pursuant to 42 U.S.C. § 1983. Defendants Todd Bastian and Bruce Dessellier[1] filed a motion for summary judgment (ECF No. 18) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (ECF No. 21) and Defendants filed a reply (ECF No. 24). Plaintiff filed "Plaintiff's Motion For Summary Judgment As A Matter Of Law And Facts" (ECF No. 10). Plaintiff filed "Plaintiff's Motion For Temporary Restraining Order" (ECF No. 7) and "Plaintiff's Motion For Determination Of Affidavit Submitted In Bad Faith" (ECF No. 26).

Plaintiff alleges in his complaint that Defendant Bastian told Plaintiff that Food Service "poisoned" him by putting flour in his milk. As a result, Plaintiff suffered with vomiting, diarrhea, body aches, and his skin turned colors. Plaintiff complains that Defendant Dessellier stated, in front of other prisoners, that he would pay to see Plaintiff get stabbed. As a result, Plaintiff alleges that he placed a grievance in the mail box, but Defendant Bastian returned the grievance to Plaintiff the next day with a note stating: "LET IT GO OR DIE." Plaintiff alleges that

---

[1] Named as Unknown Desseller in complaint. Defendants' Brief in Support of Motion for Summary Judgment states that the correct spelling of defendant's surname is Dessellier.

the next day he was informed by another prisoner, who is the leader of the Latin Counts, that Defendant Bastian was attempting to get a prisoner to stab Plaintiff. Plaintiff immediately wrote a grievance and handed it to ARUS LeClaire. When Plaintiff later returned to his cell, the goldenrod copy of his grievance was on his cell floor. Then, the Latin Counts' leader allegedly sent the original grievance directly back to Plaintiff. The Latin Counts' leader wrote Plaintiff to inform Plaintiff that Defendant Dessellier had given him the grievance, that Plaintiff was a rat, that he could not help Plaintiff, and that Plaintiff was a dead man.

Defendants move for summary judgment, arguing that Plaintiff never exhausted his grievance remedies prior to filing this action. Plaintiff has responded by asserting that Defendants interfered with his access to the grievance process by making the process unavailable to him. Plaintiff argues that Defendants' argument and reply brief is false and made in bad faith. Plaintiff argues that he is entitled to a temporary restraining order to transfer him to the Oaks Correctional Facility, so that he can be placed in protective custody.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must

consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

3

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being

grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendants Bastian and Dessellier argue that Plaintiff never exhausted his grievance remedies on the issues that are asserted in Plaintiff's complaint. Plaintiff argues that Defendants removed his grievance from the mail box and gave it to the prisoner they offered to pay if he stabbed Plaintiff. As a result, Plaintiff argues that the grievance procedures were unavailable to him. In response to Plaintiff's argument, Defendants have presented a Step III Grievance Report for Plaintiff.

5

Plaintiff filed his complaint on August 10, 2015. Plaintiff alleges that Defendant Dessellier made his comments about paying a prisoner to stab Plaintiff on or after August 3, 2015.

Plaintiff concedes that he never exhausted his grievance remedies against Defendants. Although Plaintiff argues that the grievance procedures were unavailable to him, he did file numerous Step I grievances between June 25, 2015, and the time that he filed this complaint on August 10, 2015. Plaintiff filed two Step I grievances after the August 3, 2015, incident. Moreover, the grievance policy requires prisoners who fail to receive a response at any Step of the process to appeal to the next Step in order to exhaust procedural remedies. Accordingly, Plaintiff had an available remedy to appeal his claim through the grievance process prior to filing a federal cause of action. In the opinion of the undersigned, Plaintiff's failure to exhaust his administrative remedies prior to filing this complaint requires dismissal of this action without prejudice.

Plaintiff filed a "Motion For Determination of Affidavit Submitted in Bad Faith" (ECF No. 26). Plaintiff argues that not all the grievances relied upon in Defendants' reply brief (ECF No. 24) are relevant to this complaint. Further, Plaintiff complains that Defendants are estopped from asserting that Plaintiff failed to exhaust his grievance remedies. In the opinion of the undersigned, Plaintiff's motion should be denied.

Plaintiff filed a "Motion For Summary Judgment as a Matter of Law and Facts" (ECF No. 10). Plaintiff argues that Defendants Bastain and Dessellier conspired to have him stabbed in retaliation for Plaintiff's grievance filings. Plaintiff alleges that Defendant Dessellier gave his grievance to prisoner Ranum in a attempt to get prisoner Ranum to stab Plaintiff. For this reason, Plaintiff asserts that he is entitled to summary judgment even where Defendants deny any wrongdoing. Plaintiff argues that prisoner Ranum could have gotten a copy of his grievance only

if Defendants gave Ranum a copy. At best, Plaintiff makes allegations that may create a genuine issue of fact. Plaintiff has not established that his factual allegations are true. Accordingly, it is recommended that court deny Plaintiff's motion for summary judgment.

Plaintiff filed a "Motion for Temporary Restraining Order" (ECF No. 7). Plaintiff requests that the court order non-party Warden Shane Place to transfer Plaintiff to Oaks Correctional Facility for placement in protective custody. Plaintiff seeks protection from Defendants for future plots against him. The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

   1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

   2. Whether the movant has shown irreparable injury.

   3. Whether the preliminary injunction could harm third parties.

   4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under

7

the circumstances.  *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969).  *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action.  *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989).  A review of the materials of record fails to establish a substantial likelihood of success with respect to Plaintiff's claim that the Defendants have violated his federal rights.  Plaintiff's allegations that Defendants attempted to poison him and have another inmate stab him are not proven at this point in time, and Plaintiff has not shown a substantial likelihood of success on the merits of these claims.  Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction.  Any interference by the federal courts in the administration of state prison matters is necessarily disruptive.  The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.  *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).  That showing has not been made here.

Because plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, I recommend that plaintiff's motion for  injunctive relief be denied.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 18) be granted, dismissing this case without prejudice for failing to exhaust administrative grievance remedies.  It is further recommended that Plaintiff's motions for temporary

restraining order (ECF No. 7), motion for summary judgment (ECF No. 10), and motion to determine that affidavit was submitted in bad faith (ECF No. 26) be denied.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

Dated: March 3, 2016                  /s/ TIMOTHY P. GREELEY
                                      Timothy P. Greeley
                                      United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).