UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


ROBERT SANGO,

        Plaintiff,

v.                                                                        Case No.  2:15-cv-105
                                                                          HON.  GORDON J. QUIST

TODD BASTIAN, et al.,

        Defendants.

_____/


<u>REPORT AND RECOMMENDATION</u>

Plaintiff Robert Sango filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging retaliation under the First Amendment for his litigation activities prior to his arrival at the Baraga Correctional Facility.  Plaintiff alleges that he engaged in litigation before he was transferred to Baraga.  Plaintiff alleges that while housed in his previous facility, Corrections officers Kevin Burns and Watkins attempted to throw him over a rail and offered to pay prisoners to rape Plaintiff's mother.  Officer Burns informed Plaintiff that if he did not stop litigating, Plaintiff would be placed in a holding cell, tasered until he passed out, and then hanged. Fortunately for Plaintiff, he was transferred out of that facility to Baraga.  However, Plaintiff argues that officer Burns contacted Defendant Todd Bastian through the local union staff. Thereafter, officer Burns allegedly wrote Plaintiff to inform Plaintiff that he would be dead before September.  A couple of days later, Plaintiff got sick.

Plaintiff alleges that Defendant Bastian told him that Food Service "poisoned" Plaintiff by putting flour in his milk.  Plaintiff received soy milk with his religious meals.  Plaintiff

allegedly suffered with diarrhea, body aches, change in skin color, and vomiting.  Plaintiff alleges that Defendant Bastian admitted to another prisoner that he had "poisoned" Plaintiff.    Plaintiff allegedly filed a grievance, but he never received a response.    Plaintiff alleges that because he refused to let this issue go, other officers were offended.  Plaintiff became fearful because September was getting closer.  Plaintiff alleges that Defendant Bastian began to recruit other staff members, including Defendant Bruce Dessellier.

Plaintiff complains that Defendant Dessellier stated, in front of other prisoners, that he would pay to see Plaintiff get stabbed.  Plaintiff alleges that Defendant Dessellier began calling him "Bobby-X," in an alleged effort to cause other prisoners to assault Plaintiff.  As a result, Plaintiff states that he placed a grievance in the mail box, but Defendant Bastian returned the grievance to Plaintiff the next day with a note stating: "LET IT GO OR DIE."   Plaintiff alleges that he was informed by the prisoner leader of the Latin Counts that Defendant Bastian was attempting to get a prisoner to stab Plaintiff.  Plaintiff immediately wrote a grievance and handed it to ARUS LeClaire.  When Plaintiff later returned to his cell, the goldenrod copy of his grievance was on his cell floor.   Additionally, the Latin Counts' leader sent the original grievance directly back to Plaintiff.  The Latin Counts' leader informed Plaintiff that Defendant Dessellier had given him the grievance, that Plaintiff was a rat who he could not help, and that Plaintiff was a dead man.

Defendants filed a motion for summary judgment and qualified immunity (ECF No. 42).  Plaintiff filed a response (ECF No. 46).  Defendants filed a reply to Plaintiff's response (ECF No. 52).   Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the

2

burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's

3

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that upon his arrival at the Baraga Correctional Facility, an officer from his previous prison telephoned Defendant Bastian to inform him about Plaintiff's prior litigation activities in order to induce Defendant Bastian to take retaliatory action. Defendant Bastian does not challenge Plaintiff's claim that he had engaged in protected conduct. Defendant Bastian argues that Plaintiff cannot show that there was adverse action, or that any adverse action was motivated by Plaintiff's protected conduct. Plaintiff alleges that his soy milk was poisoned by Defendant Bastian with flour. Defendant Bastian explains that Food Service informed custody staff that the kitchen staff accidently mixed flour instead of substitute milk powder into beverages that had been served to prisoners. Defendant Bastian states that he merely informed Plaintiff of the mistake.

It is Plaintiff's initial burden, under *Thaddeus-X,* to establish that "the adverse action was motivated at least in part by the prisoner's protected conduct." *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010). If Plaintiff makes this showing, "then the burden shifts to the defendants to show that they would have taken the same action even absent such protected conduct." *Id.* In making this showing, Plaintiff must provide more than "conclusory allegations of retaliatory motive 'unsupported by material facts.'" *Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Guitierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987). "Motive is often very difficult to prove with direct evidence in retaliation cases. Circumstantial evidence may therefore acceptably be the only means of establishing a connection between a defendant's actions and the plaintiff's protected conduct" *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). "The

circumstantial evidence can include the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action." *Hill*, 630 F.3d at 475-76.

In the opinion of the undersigned, Plaintiff cannot establish that Defendant Bastian took adverse action against him by putting "poison" in Plaintiff's milk.  First, Plaintiff has presented no evidence that suggests that he was poisoned, other than his undocumented claim that he became sick after he drank the milk.  Second, Plaintiff has presented no evidence which can establish that Defendant Bastian put anything in his milk.  Plaintiff has presented an unsupported claim that Defendant Bastian had told another prisoner that he poisoned Plaintiff.  Finally, Defendant Bastian simply informed Plaintiff that Food Service had made a mistake and put flour instead of milk powder in some inmate beverages.  Plaintiff has not explained how drinking a beverage that contained flour could be harmful and could cause him to become sick.  Moreover, there exists no evidence that could support Plaintiff's claim that Defendant Bastian put the flour in his beverage.  Finally, no evidence exists to establish that Defendant Bastian tampered with Plaintiff's milk because Plaintiff had engaged in litigation activities against corrections officers at his previous prison.

However, it is the opinion of the undersigned, that Plaintiff has presented enough evidence to create a genuine issue of fact that Defendant Bastian retaliated against Plaintiff after Plaintiff attempted to file a grievance against Defendant Bastian.  Plaintiff asserted that he submitted a grievance on this incident by placing the grievance in the locked mail box.  Plaintiff claims that Defendant Bastian gave him the grievance back the next day with a note written on the grievance stating "Let It Go Or Die."  Plaintiff alleges that the next day Defendant Bastian asked

5

prisoner Styles to stab Plaintiff.  (Affidavit of Prisoner Styles, ECF No. 4, PageID.27; and statement from witness Kevin Hamilton dated August 29, 2015, indicating that he heard prisoner Ramon tell Defendant Bastian that he would not stab Sango, ECF No. 9-1, PageID.42).  Defendant Bastian has simply denied these allegations.  Plaintiff has submitted a verified complaint under 28 U.S.C § 1746, and affidavits from two prisoners that support his claims.  (ECF No. 9-1, PageID.43 and ECF No. 4-1, PageID.28).  In the opinion of the undersigned, a genuine issue of material fact exists regarding whether Defendant Bastian took retaliatory action against Plaintiff after Plaintiff attempted to file a grievance against Defendant Bastian.

Plaintiff alleges that Defendant Bastian, after increasingly becoming irritated that Plaintiff would not let the issue go, recruited Defendant Dessellier.  Defendant Dessellier began calling Plaintiff "Bobby-X."  Plaintiff claims that Bobby-X had a contract on his life for naming the prisoners who had assaulted a female corrections officer.  Plaintiff complains that Defendant Dessellier told another corrections officer in front of other prisoners that he would pay to see Plaintiff get stabbed.   Plaintiff alleges that Defendant Dessellier gave his grievance to another prisoner so that the prisoner would assault Plaintiff.  (Affidavit from J. Ranum[1], ECF No. 4-1, PageID.28).  Defendant Dessellier denies that he called Plaintiff "Bobby-X," that he made a statement that he would pay to see Plaintiff get stabbed, or that he gave a copy of Plaintiff's grievance to the head of the Latin Counts or any gang leader.  Defendant Dessellier argues that Plaintiff has failed to present direct or circumstantial evidence of retaliatory conduct.  However,

---

[1] Witness prisoner Ranum indicates that Defendant Dessellier gave him a copy of Plaintiff's grievance and Defendant Bastian left a knife outside prisoner Ranum's cell so that he could stab or "butcher" Plaintiff.  Defendants have failed to address this affidavit in their motion.  Defendant Bastian allegedly threatened Ranum with a sexual misconduct ticket if he failed to stab Plaintiff.  Prisoner Ranum states that he is not the leader of the Latin Counts, but Plaintiff identified him as the leader in his grievance.

when viewing the evidence in the light most favorable to Plaintiff, a question of fact exists regarding whether Defendant Dessellier took retaliatory action to cause Plaintiff harm due to Plaintiff's grievance and litigation activities.

Defendants argue that Plaintiff is alleging facts that may support an Eighth Amendment claim, but that the facts fail to support a retaliation claim.  Plaintiff has not asserted an Eighth Amendment claim in his complaint.  Plaintiff claims that Defendants engaged in retaliatory conduct due to his litigation activities and grievance filings.  Plaintiff alleges that as a result of his protected conduct, Defendants took actions to have Plaintiff assaulted by other prisoners, and threatened Plaintiff with harm if he did not stop pursuing his grievances.   In the opinion of the undersigned, Plaintiff has submitted sufficient evidence in his affidavits and verified complaint to overcome Defendant's affidavits denying that they each engaged in the alleged conduct.

Defendants argue that they are entitled to qualified immunity.   Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment,

7

distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

   In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.*

   Plaintiff argues that because he filed grievances and engaged in litigation, Defendants directly or indirectly attempted to get other inmates to assault Plaintiff. Defendants argue that Plaintiff has failed to present sufficient evidence to show that Defendants violated clearly established law. Plaintiff has presented affidavits and a verified complaint that support his claims that Defendant Bastian threatened him with harm if refused to stop pursuing his grievance against Defendant Bastian, and that Defendant Bastian attempted to have another inmate stab Plaintiff. Plaintiff has presented affidavits and a verified complaint that support his claims that Defendant Dessellier called Plaintiff "Bobby-X" to incite other inmates to assault Plaintiff, that Defendant Dessellier made the statement in front of other inmates that he would pay to see Plaintiff get stabbed, and that Defendant Dessellier gave Plaintiff's grievance to another inmate to cause that inmate to assault Plaintiff.

   Accordingly, it is recommended that Defendant's Motion for Summary Judgment and Qualified Immunity (ECF No. 42) be granted in part and denied in part as follows: Plaintiff's claim that Defendant Bastian retaliated against him by putting flour in Plaintiff's milk be

dismissed.  It is recommended that the motion be denied as to Plaintiff's claims that Defendant Bastian and Defendant Dessellier directly or indirectly attempted to get other inmates to assault Plaintiff in retaliation for Plaintiff's grievance and litigation activities.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:  _____March 27, 2017_____          _____*/s/ Timothy P. Greeley*_____
                                             TIMOTHY P. GREELEY
                                             UNITED STATES MAGISTRATE JUDGE


9